J-S04035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TENTH PRESBYTERIAN CHURCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP SNYDER | : | |
| | : | |
| Appellant | : | No. 2580 EDA 2022 |

Appeal from the Order Entered September 20, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190703016

BEFORE:  MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:               **FILED MARCH 1, 2023**

This case returns to us a third time in an ongoing dispute involving Philip Snyder (Snyder) and his protests of his former church, Tenth Presbyterian Church (the Church).  In our most recent remand, we directed the Court of Common Pleas of Philadelphia County (trial court) to explain why its distance restriction of 1,000 feet was "the least necessary distance to protect Church property, permit the congregants' and Church employees access to the Church and to hold services without distraction, with the least possible impingement on Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership on public streets and sidewalks."  On remand, the trial court

---

[*] Retired Senior Judge assigned to the Superior Court.

shortened the distance requirement to 500 feet and made several factual findings in support of the new restriction.

Snyder now appeals from the most recent order and asserts that the trial court's new distance requirement is still not the least necessary distance to protect the Church's property and congregants while also not impinging on his constitutional right to protest. After review, we are constrained to reverse the trial court's distance requirement and remand again with instructions.

**I.**

**A.**

We have previously summarized the facts and procedural history of this dispute as follows:

> The Church owns several properties in Philadelphia. The Church's primary facility is located at 1701 Delancey Street ("the Property"). Snyder moved to Philadelphia in 2008, after which he joined the Church, where he remained a member until the Church excommunicated Snyder in August 2016. Snyder thereafter began picketing at the Property regarding his excommunication and the conduct of certain current and prior Church officials. Snyder brought a defamation action against individual members of the Church, but ultimately, a jury tendered a verdict against Snyder.
>
> After the verdict in the defamation action, Snyder protested outside of the Property every Sunday, before and after Church services. On July 24, 2019, the Church filed a Complaint for an injunction and an Emergency Motion for Injunctive Relief for a preliminary injunction. The Church sought to restrict Snyder from coming within 1,000 feet of all properties owned by the Church. Following oral argument, Snyder temporarily agreed to the Church's requested relief.
>
> The trial court subsequently conducted a hearing on the Church's Motion for a preliminary injunction on January 30, 2020,

and February 10, 2020. The trial court described the evidence presented at that hearing as follows:

Snyder testified that he began picketing outside of the Property after the March 22, 2019, jury verdict more frequently, with a sign that contained the phrase "naked beatings," "lying," and "rape," because he was displeased with the results of the case. Snyder further testified that he had protested while wearing a body camera and filmed congregants outside of the Property. Snyder testified that a trial court Order and subsequent Opinion in the defamation case misrepresented the truth. Douglas Baker (Baker), the Church's former administrator, testified that Snyder frequently wore a visibly "concealed" firearm to church services when he was a member, and that he continued the practice while picketing with the sign and body camera. Baker testified that Snyder would verbally harass and yell at congregants outside the Property and then post body camera videos on a blog. Dr. William Goligher (Dr. Goligher), senior minister for the Church, testified that Snyder called him the "son of Satan" and a liar. Dr. Goligher testified that Snyder had verbally disparaged Snyder's own family for not committing to his protest and not being faithful, including referring to Snyder's wife as Job's wife ... Dr. Goligher also testified that Snyder seemed preoccupied with safety and firearms, such that he would stand beside Dr. Goligher and point out individuals whom he thought were carrying firearms. Snyder's fixation on security and policing, even minor behaviors of the Church congregants, went on for years and included concerns about stolen phones, money, and immigrants. Snyder himself provided testimony that he has been the only individual telling the truth, that he has mailed 100 pages of material to 200 members of the Church, that he will never stop any of his behaviors until the Church's leadership has resigned in full, and that the Church was trying to poison him and hire a hitman to assassinate him. Susan Elzey (Ms. Elzey), a congregant, testified that outside of Church services on June 16, 2019, Snyder told her he was an instrument of God, similar to a prophet, and that only Snyder knows the true nature of Dr. Goligher's soul. Snyder went on to tell Ms. Elzey that Dr. Goligher was a son of Satan, and that any congregants who support Dr. Goligher are doing Satan's work. Snyder also

told Ms. Elzey that he was unhappy with his wife, described her as Job's wife because she did not support him, and that his oath to remove Dr. Goligher from the Church was more important to him than his family.

By Order dated February 10, 2020, the trial court granted the Church's Motion and enjoined Snyder from appearing within **five thousand (5,000) feet** of the Church's properties located at (1) 1701 Delancey Street; (2) 1700 Spruce Street; (3) 315 S. 17th Street; (4) 1710 Spruce Street; and (5) 1716 Spruce Street.

Trial Court Opinion, 8/21/20, at 1-5 (emphasis added).

*Tenth Presbyterian Church v. Snyder*, 2021 WL 4839339, at *1-2 (Pa. Super. filed October 18, 2021) (unpublished memorandum) (brackets and some quotation marks omitted; emphasis in original).

Snyder timely appealed the trial court's order granting the Church's motion. On appeal, we affirmed the trial court's order in part, reversed in part, and remanded for further proceedings. First, we affirmed the trial court's determination as to the propriety of the preliminary injunction because "Snyder engaged in aggressive and agitated behavior that frightened and agitated Church members inside and outside of the Property." *Id.* at *8. We reversed, however, the 5,000-foot distance requirement against Snyder as far exceeding the appropriate scope of relief. Accordingly, we remanded for the trial court "to fashion a limitation that achieves the specific needs of this case, *i.e.*, a distance that is sufficient to protect congregants' access to the Church and its services, yet continues to uphold Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership." *Id*.

- 4 -

As for the Church's initial request for a uniform 1,000-foot prohibition on Snyder's protests at all of the properties, we noted: "the Church broadly requested a one-thousand-foot prohibition on Snyder's protests. The Complaint couches the requested relief in the broadest terms but does not afford Snyder his constitutional right to protest the Church and its leadership. Any preliminary injunction must be narrowly tailored to address the physical realities of each Church property, while balancing Snyder's federal and state right to free speech." *Id.* at *7 n.3 (citing ***Santoro v. Morse***, 781 A.2d 1220, 1230 (Pa. Super. 2001)).[1]

**B.**

On November 10, 2021, in accordance with our remand directive, the trial court issued an order vacating the terms of its initial injunction and granting the Church's emergency motion for injunctive relief. The trial court decreased the distance requirement against Snyder from 5,000 to 1,000 feet, applicable to all Church-owned properties and reads in relevant part:

The Defendant Philip Snyder is ENJOINED from:

1. Distributing, picketing, leafleting, harassing, intimidating, placing in fear, threatening or otherwise communicating to Church members within one thousand (1,000) feet of the church located at 1701 Delancey Street, Philadelphia, PA 19103 on Sundays;

---

[1] Snyder petitioned for allowance of appeal to the Supreme Court of Pennsylvania, which denied his petition on May 3, 2022. Snyder went on to file a petition for writ of certiorari in the United States Supreme Court, which denied his petition.

2. Appearing within one thousand (1,000) feet of all property owned and/or occupied by Tenth Presbyterian Church, including but not necessarily:  1700 Spruce Street, 1701 Delancey Street, 315 S. 17th Street; 1710 Spruce Street, and 1716 Spruce Street, Philadelphia, PA 19103.

Order, 11/10/21, at 1.

After Snyder timely appealed, the trial court explained its reasoning for the 1,000-foot restriction, as it acknowledged that "the content of [Snyder's] speech is protected as his subjective opinion," and determined that a 1,000-foot distance requirement "is narrowly tailored because [Snyder] is free to protest and distribute material more than 1000 feet from [the Church's] properties." Trial Court Opinion, 4/7/22, at 12-13.  The trial court stated that it "couched [the injunction] in the narrowest terms possible because it is a restriction that will accomplish the pin-pointed objective of protecting Appellee's leadership and congregants while they worship," and noted the parties' litigious history and Snyder's "threat of potentially violent behavior" as reasons for its decision.   *Id.* at 13.

On appeal, Snyder argued that the injunction was not narrowly tailored to address the harm alleged by the Church and that the 1,000-foot distance restriction applicable to all Church owned and/or occupied properties must be vacated.  He further argued that the distance requirement prohibiting him from appearing/protesting within the specified boundary deprived him of his right to engage in constitutionally protected expressive conduct without leaving open ample alternative methods of communication.

After review, we agreed with Snyder and held that the trial court's uniform 1,000-foot restriction was not narrowly tailored to permit him to effectively protest the Church and its leadership. As we explained:

> The trial court … has issued an order on remand that does not indicate it weighed the physical characteristics of each Property and tailored the distance requirement accordingly, as it broadly enjoins Snyder from "appearing" within 1,000 feet of any Church "owned and/or occupied" Property. Although the order prohibits active picketing only at the primary facility where congregants attend regular services on Sundays, Snyder's mere presence within 1,000 feet of any Church Property is a violation of the order.
>
> Additionally, the injunction not only encompasses Property owned by the Church, but also includes any facilities the Church "occupies." While the order lists the street addresses of five such properties, the restriction is "not necessarily" limited to those specified. This language is far from precise or narrow in scope, as it potentially captures unidentified locations that Snyder is unaware of.
>
> Furthermore, the injunction disregards our prior finding that the Church's requested relief of a uniform 1,000-foot distance restriction is not sufficiently narrowly tailored to balance the congregants' ability to access Church Properties with Snyder's right to free speech.

***Tenth Presbyterian Church v. Snyder***, 2022 WL 4101153, at \*4 (Pa. Super. filed September 8, 2022) (unpublished memorandum) (citations omitted).

Thus, because the trial court's distance requirement was not the narrowest means possible to achieve its goal, we vacated the trial court's order and remanded the case a second time. In so doing, we emphasized that the trial court, in fashioning its injunction, was obliged to use the "narrowest

terms that will accomplish the pin-pointed objective" as framed by this Court and tailor its relief "as precisely as possible to the exact needs" of this case in a manner that imposes the least restraint on Snyder's free speech, taking into consideration the physical realities of each Church property. *Id.* at \*4 (citing *Turner Const. v. Plumbers Local 690*, 130 A.3d 47, 69 (Pa. Super. 2015)).

Accordingly, we gave the trial court the following instructions:

> On remand, as well as considering its finding that Snyder engaged in aggressive and agitated behavior that frightened and agitated Church members inside and outside of the Property, the trial court should, in setting the distance requirement set forth expressly why the particular distance restriction is the least necessary to protect Church property, permit the congregants' and Church employees access to the Church and to hold services without distraction, with the least possible impingement on Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership on public streets and sidewalks.

*Id.* at \*5.

## C.

On September 20, 2022, the trial court entered a new order granting the Church's emergency motion for injunctive relief and, like it did before, decreased its distance requirement, this time setting the distance requirement at 500 feet. As a result, the trial court's order read in relevant part:

> 1. Distributing, picketing, leafleting, harassing, intimidating, placing in fear, threatening, or otherwise communicating to Church members within [500 feet] of the church located at 1701 Delancey Street, Philadelphia, PA 19103 [] on Sundays;
>
> 2. Appearing within [500 feet] of all property owned and/or occupied by [the Church], in the immediate vicinity of [the Church] including: 1700 Spruce Street, 1701 Delancey Street,

315 S. 17th Street, 1710 Spruce Street, and 1716 Spruce Street, Philadelphia, PA 19103[.]

Order, 9/20/22, at 1.

The trial court then went on to make several factual findings in support of its distance requirement. First, the trial court found that Snyder engaged in "aggressive, threatening, and disruptive behavior" that was harassing to the Church's congregants and employees.

Next, the trial court found that a 500-foot restriction was "the least necessary to protect Church property and permit congregants as well as employees' access to both the Church and its services." *Id.* at 2. In support, the trial court gave this reasoning:

> According to reference.com operated by Ask Media Group, "a typical city block is from 310 to 323 feet in length." As such, a [500 foot] restriction upon Snyder will permit Snyder to continue to exercise his constitutional right to free speech, while [at] the same time keep him sufficient distance away from Tenth Presbyterian Church property so as to prevent any egregious distraction, harassment or safety concerns by congregants, employees, or owners.

*Id.* at 2 n.2.

> Relatedly, the trial court also found that

> [t]he evidence shows that even with [Snyder's] protest being located outside the church and more than [20 feet] away, congregants could still hear [Snyder's] loud verbal criticisms as well as his protests upon entering the church building and attending services. The evidence also demonstrates that all of the properties subject to this injunction are actively used by Church congregants or employees and are located in close proximity to the area of where Mr. Snyder has engaged in his disruptive and harassing conduct.

- 9 -

*Id.* at 2-3 (footnotes with record citations omitted). Thus, in the trial court's view, a 500-foot restriction was the least possible impingement on Snyder's constitutional right to protest the Church and its leadership, while at the same time allowing Church congregants and employees access to the Church and "hold services without fear of harassment, distraction or safety concerns." *Id.* at 3.

Snyder timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925. On appeal, Snyder raises a single issue for our review:

> Did the [trial court] commit an error of law and/or abuse its discretion by failing to narrowly tailor its injunction to address the alleged harms claimed by [the Church]?

Snyder's Brief at 4.[2]

## II.

We again set forth the general principles guiding our analysis of this matter. As this Court has explained, "[t]he purposes of a preliminary injunction are to preserve the status quo and prevent imminent and irreparable harm which might occur before the merits of the case can be heard

_____

[2] "Appellate courts review a trial court order granting or denying a preliminary injunction for an abuse of discretion." *Marcellus Shale Coal. v. Dep't of Envtl. Prot. of Commonwealth*, 185 A.3d 985, 995 (Pa. 2018) (citation omitted). "Additionally, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (citation and emphasis omitted). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decree." *Id.* (citation omitted).

and determined." ***Constantakis v. Bryan Advisory Servs., LLC***, 275 A.3d 998, 1016-17 (Pa. Super. 2022) (citation omitted). A petitioner seeking a preliminary injunction must establish each of the following prerequisites:

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and 6) that a preliminary injunction will not adversely affect the public interest.

***Id.*** at 1022 (citations omitted).

Additionally, "a preliminary injunction must be crafted so as to be **no broader than is necessary** for the petitioner's interim protection." ***Santoro v. Morse***, 781 A.2d 1220, 1230 (Pa. Super. 2001) (citation omitted; emphasis added). The United States Supreme Court has also directed that "an order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." ***Turner Const., supra*** at 69 (citing ***Carroll v. President and Commissioners of Princess Anne***, 393 U.S. 175, 183, (1968)). Consequently, an injunction that restrains free speech "must be tailored as precisely as possible to the exact needs of the case." ***Id.***

**III.**

Snyder first argues that the trial court ignored this Court's remand directive to consider the physical characteristics of the Church's premises. Snyder contends that apart from its finding that congregants could hear him inside the church,[3] the trial court gave no explanation for why any distance shorter than 500 feet would not be appropriate. Even if he was audible beyond 20 feet from the church, Snyder asserts that the trial court failed to adequately explain why a 500-foot restriction was the least distance necessary to protect the Church's congregants and employees.

While it is not true that the trial court failed to explain its new distance requirement, we agree with Snyder that its explanation failed to answer our remand directive. As noted, we asked the trial court to set forth why its 1000-foot restriction was the least necessary distance "to protect Church property, permit the congregants' and Church employees access to the Church and to hold services without distraction, with the least possible impingement on

_____

[3] Snyder contests with the trial court's finding that he could be heard inside the Church, arguing that it misinterpreted the testimony of Ms. Elzey, who testified that she continued to hear Snyder as she entered the building. *See* N.T., 1/30/20, at 72. Snyder argues that this testimony establishes only that he could be heard while members entered the Church, not while they were inside. However, as the Church points out, Ms. Elzey also testified that Snyder was being loud enough that several other members already inside the Church told her that they also heard him. *Id.* at 72-73. Thus, the trial court's finding that Church members could hear Snyder inside the Church rather than just entering is supported by the evidence.

- 12 -

Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership on public streets and sidewalks."

On remand, the trial court, in setting its new distance requirement at 500 feet, did not cite any record evidence or receive any new evidence. Instead, the trial court cited its own internet research that a "typical" city block is 310 to 323 feet in length, seemingly concluding that keeping Snyder around a block-and-a-half away from the Church was the only way to ensure that his protest does not deter congregants and employees of the Church from accessing its properties.

The problem with this conclusion, however, is that it is not clear what evidence the trial court is relying on for its finding that 500 feet is appropriate *under the facts of this case*, taking into consideration the physical layout of the Church's properties and the surrounding neighborhood. Like it failed to do before, there is no evidence that the trial court, in setting its distance requirement, weighed the physical characteristics of the Church's property and then tailored its distance requirement so that Snyder could still meaningfully protest the Church and its leadership. In the absence of such evidence in this case, we are left to conclude that the trial court's distance requirement of 500 feet—which would be well over the length of a football field—still puts Snyder's protests well out of sight of the Church and, therefore, effectively extinguishes his constitutional right to protest. Thus, like we did

before, we are constrained to vacate the trial court's order with respect to its 500-foot distance requirement.

Next, Snyder also faults the trial court for not specifically identifying all Church properties that would fall under its order. To recap, in its prior order, the trial court enjoined Snyder from "appearing within one thousand (1,000) feet of all property owned and/or occupied by Tenth Presbyterian Church, **including but not necessarily**: 1700 Spruce Street, 1701 Delancey Street, 315 S. 17th Street, 1710 Spruce Street, and 1716 Spruce Street, Philadelphia, PA 19103." Order, 11/10/21, at 1 (emphasis added). While acknowledging that the trial court listed specific properties, we observed that its restriction was not necessarily limited to those properties. *See Tenth Presbyterian Church*, 2022 WL 4101153, at *4. This language, we further noted, was "far from precise or narrow in scope, as it potentially captures unidentified locations that Snyder is unaware of." *Id.*

On remand, though, the trial court did not attempt to limit its order to only those properties identified above. Instead, the trial court enjoined Snyder from "[a]ppearing within [500 feet] of all property owned and/or occupied by [the Church], **in the immediate vicinity** of [the Church] **including**: 1700 Spruce Street, 1701 Delancey Street, 315 S. 17th Street, 1710 Spruce Street, and 1716 Spruce Street, Philadelphia, PA 19103[.]" Order, 9/20/22, at 1 (emphasis added). Thus, the trial court added the phrase

- 14 -

"in the immediate vicinity" and removed the phrase "but not necessarily" and kept everything else the same.

Again, we are constrained to agree with Snyder that the trial court's revisions on remand did not address the concerns raised in our previous decision. As our Supreme Court has recognized, "it is widely accepted that general expressions such as 'including,' or 'including but not limited to,' that precede a specific list of included items are to be considered as words of enlargement and not limitation." *Dep't of Envtl. Prot. v. Cumberland Coal Res., LP*, 102 A.3d 962, 976 (Pa. 2014). Consequently, the trial court's elimination of the phrase "but not necessarily" did not restrict the Church's property to only those properties listed. Consequently, the trial court's latest order still suffers from the same defect as its preceding one because it possibly still captures unidentified locations from which Snyder is enjoined from appearing within 500 feet.[4]

Accordingly, we are forced to remand again and to hold a new hearing if it deems it necessary for the trial court to set forth expressly why its 500-foot distance requirement is the least necessary to protect the Church's congregants and employees access to the Church and hold services without

_____

[4] Snyder also attempts to reassert his argument that the trial court erred in granting the Church's motion and imposing an injunction enjoining him from appearing within a set distance of the Church and its property. However, as we have already affirmed those parts of the trial court's order, we will not revisit them here where the sole issue is the distance requirement.

distraction, while also being the least possible infringement on Snyder's constitutional right to protest the Church and its leadership in public. In doing so, it should list what conduct of Snyder is causing the harm and why that particular distance requirement is necessary to alleviate that harm. Additionally, in setting forth its distance requirement, the trial court should identify all properties that Snyder is enjoined from appearing.

Order vacated. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/01/2023